The next matter for oral argument this morning is Waterfront Commission of New York Harbor v. Governor of New Jersey. And we have time divided between counsel for appellants. First up is Mr. Sokol. Good morning, your honors. I'm Leon Sokol. I'm here representing the New Jersey legislature, the presiding officers, Senate President Stephen Sweeney, Speaker Craig Coughlin and the New Jersey Senate and General Assembly. And I address this to all of counsel. Clearly, New Jersey wants a divorce from New York. But you have raised a number of threshold issues which we need to address. And so I would suggest that we concentrate, at least take up those issues at the outset. I plan to, your honor. There are two issues that I will address. One of which is, can New Jersey exercise its sovereign right to withdraw from the compact when the compact is silent with regard to the right of withdrawal? And did the counsel to the commission have legal authorization to bring the suit in the name of the commission? And there are undisputed facts, one of which is the vast majority of port activity currently occurs in New Jersey. New York has ignored and is apparently disinterested in this case. And all parties agree that the framers of the compact intended the compact to be temporary and that the compact itself is silent as to the right of withdrawal. And the way that intent was memorialized in the agreement was that they could have annual reviews, correct? Yes. But there haven't been. As far as I can tell, I don't see anything in the record to indicate that there have been annual reviews as a matter of course. I believe that the I don't know the exact number of years, but for the past several years, the commission has not submitted an annual report to the state. So shouldn't we read that to be that if the intent of those that entered the compact was to be honored, that the way to get out of this is for there to be annual reviews and the parties get in the room and both sides agree to terminate because the commission can't act without the concurrence of both commissioners. Yes. But that did not happen. What has occurred is over the years since the compact was created, a substantial movement of economic activity from both sides to primarily on the New Jersey side. And the attempts by the New Jersey legislature to amend the compact in recent years has not been supported by New York. Council, I take it those go to merits issues and consistent with what the chief judge mentioned at the outset. I'd like to ask you about the threshold issue that you identified as you will address. That is the legal authorization of a council. We have a few issues here that we're trying to work through from the excellent briefing, including including from amicus in this case. But they include that. The sue and be sued provision seems to be a standalone power and the enforcement provision, a separate one. The the actions of the commissioners needing to be unanimous consent of both commissioners for the for the commission to act doesn't address how to deal with the situation where there is a recusal of one and a post hoc ratification by the other. And if we are looking at some kind of implied delegation, is this an issue where we would simply have to remand for fact finding about what the authorization was of legal counsel? And I realize there's a few different issues in there. But if you can talk us through those in terms of the authorization of counsel to bring the suit, I'll be happy to. My co-counsel, the attorney general will address the issue of the need for fact finding and remand. So I'll address the issue of why the general counsel to the commission did not have capacity to bring the suit, which I think was the initial initial question that you raised. The the commission relies on two main points. One is that the bylaws give to the general counsel the right to pursue other legal matters. And this isn't I assume your position, though, is or would be that this is this is not just another legal matter. It goes to the very existence of the commission. Absolutely. Your Honor. And that's a point that we stressed in the brief that we filed that to to try to trivialize this suit and compare it to an enforcement action of a labor or employment dispute goes way beyond the cases that were cited. The commission in their brief talks about over the past 66 years, 83 suits having been brought. But presumably all of those suits are within the scope of a compact, which is to regulate and enforce a labor labor and important unemployment matters. They've provided no evidence of the either history or the ability to sue one of the two states that created the compact and challenge the legal adoption of a statute. And we believe that that in and of itself required the unanimous approval of the commissioners. And if you think about it, the. They see that Governor Murphy actually Governor Christie signed into law Chapter three, 24. Which requires that the governor implement the removal of the state of New Jersey from the compact. At the very least, they should have convened a meeting of the commissioners because this was a momentous occurrence and either sought commissioner approval to challenge the enactment by the state of New Jersey. Or at the very least, advise them. As to how they intended to proceed. But none of that occurred. In fact, what did happen was the commission council retained outside counsel and they can file the complaint without even notifying either of the commissioners. And it wasn't until after the complaint was filed that either commissioner learned that a suit had been filed. And then so subsequently. Commission counsel goes to Commissioner Goldstock, the New York commissioner, and he says, I'm all right with what you did. So it's a subsequent gratification. So I don't disagree with anything you've said so far, but all of that is essentially factual and historical recitation of what either occurred or did not occur here. And as I indicated at the outset, New Jersey has raised these preliminary issues, these threshold issues, which we need to deal with. And I realize you're touching on that, but is the short answer here simply that the compact does not speak at all to authority to initiate a suit that would wrap up or dissolve the commission. Nor does it speak to the ability to hire outside counsel for something that is as final as that. And further, that the narrow bylaws enacted pursuant to the compact don't provide any express authority in that regard either. That's correct. So what what more is there to say, at least as to as to that point regarding the authority of either the executive director or as seems to have been the case here? Well, on the point that I was making regarding counsel going to Commissioner Goldstock, I would take that as an admission on the part of counsel that commissioner approval was required. And with that admission, the failure to record to receive as the compact required unanimous approval, even though the New Jersey commissioner had recused himself and under Texas versus New Mexico. The Supreme Court has said even if there's going to be a deadlock, even if the deadlock is for 10 years, you must adhere to the requirements of the compact and get unanimous approval. And that's it. We have anything more here other than post hope declarations of the two commissioners. Only one commission. We know we. Yes. But was there not more than simply a recusal? Didn't the New Jersey commissioner was at Murphy. Commissioner Murphy, in his declaration, stated that he had not been advised, nor had his consent been sought. But that's as far as he went in his declaration. Is are either you or Mr. Love going to speak to the question of who the real parties in interest are here? I thought that was going to be one of the issues. Mr. Love is going to address that issue. I don't think we have any more questions for you than Mr. Sokol. I may have missed it. I'm not sure who is reserving rebuttal. Mr. Lovers, how much? All right. Thank you very much, sir. Mr. Love. My name is Aaron Love. I'm a deputy attorney general here on behalf of Governor Murphy. I'd like to reserve three minutes for a bottle. You're reserving what? Three minutes. Three minutes. Thank you. I already telegraphed this. As I understand it, the New Jersey or one or the other of the briefs, I can't remember which one argues that the state is the real defendant party in interest here, even though the governor is named. So the governor does have certain specific duties to fulfill here, however, that would be pursuant to or at least relative to the activities conducted pursuant to the interstate compact. Does he not? The governor's responsibilities are limited to giving notice of New Jersey's withdrawal. No specific enforcement duties at all. The all the enforcement is essentially delegated to the division of the state police, which is under the attorney general's office. So the governor is being sued here, as I understand, simply to prevent him from giving the notice of withdrawal. But I do believe that this is in essence a suit against the state to invalidate the state statute and a state contract. In effect, a compact with another state. So the real parties in interest here should be, as your honor has suggested, a divorce between two states. And what is notable about this case is that neither of those states want to be in this court. Neither of those states are here litigating this issue. And I think your honor has hit the nail on the head here. This lawsuit is being forced by the officers of the commission, which is a curiosity. Your honor, I would. Does that mean it's just the commission trying to keep itself alive when both states want it to go away? I want to be very careful here because I acknowledge that there are serious issues at stake here. But this is not an issue where we are intending to simply relieve the waterfront of all regulation. The state has made a determination in its discretion that it wants to go a slightly different direction on this and no longer rely on the commission to do so. New York has not objected to that. That's within our power to do it. It's within our power and within the discretion of the legislature to allocate those responsibilities to the Division of State Police. They thought this out carefully. New York doesn't object. Why are we here? The Supreme Court in Virginia Office of Protection and Advocacy, I think, has given us some guidance or some criteria in any event as to whether the state is a real defendant in interest. How do we apply that here? Your honor, the VOPA decision of the Virginia Office of Protection notes that it is very rare. Indeed, that was the only case that the justices could think of where an arm of the state actually sued under Ex Parte Young to prevent another state officer from taking some action that the legislature had directed him to do. They said we should find it in very narrow circumstances that that would be permissible. And there are two reasons why that should not be permissible here. One is that the authorizing compact here does not give the commission any right of enforcement against either state. This issue of the commission intending to force the states into something was not contemplated in the compact. Indeed, this is not a compact that regulates the states in any manner. So they do not have a cause of action, one. All right. So can New Jersey satisfy the criteria that have been provided to us in Virginia office to demonstrate that they are the real and substantial party in interest here? I believe so, because essentially this is a suit trying to prevent the state from exercising some real sovereign power. And Governor Murphy's role in that is purely incidental. Somebody had to give notice. Somebody really had to sign this and give notice, and it just happens to be Governor Murphy. But effectively this is the state acting to, one, exercise its sovereign power to withdraw from a compact, which it entered into with a sister state, and two, to then exercise its police powers within its own jurisdictional boundaries in a manner that it sees fit. Both of those are sovereign powers that are vested in the states, not in Governor Murphy alone. Obviously he's the executive. But really this is a suit about the states and about what states should be allowed to do in their compacts with each other. As a practical matter, then, if we agree with you and say at the threshold they didn't have a right to bring this action, then what happens? Is there just a case stated where New Jersey and New York sue one another in the Supreme Court under its original jurisdiction and just collusively, I'm not using that word pejoratively, but they file a collusive action to say this compact is no more. I mean, there is a federal statute that endorsed it, right? So something has to be, you know, what happens? I'm curious about the practicalities of this. The compact clause says Congress has to agree to a compact when you enter into it. It says nothing about Congress having to consent to the withdrawal of it. That's the explicit constitutional language, right? It is, Your Honor. And this compact is not codified anywhere in federal law. It's not like there's a federal statute that is now going to have to be removed from the books. There's a single act that's reported that says Congress gives its consent to the compact set forth with him hereafter. That's it. And so there is no continuing rule for Congress. No, the states do not have to come in and get some kind of declaratory judgment that they're out of it. What about the fact that Congress reserved to itself in this compact the ability to repeal the act? Congress reserved its power to repeal its consent to the compact, not to reserve anything about its power to actually shape the compact itself or to terminate the compact. I guess in theory, you know, this is the issue that came up in Tobin, maybe Congress can withdraw its consent. I'm not aware that Congress has ever done so to a state compact, and therefore the compact then kind of falls apart. But Congress is not the only person who withheld to it the right to terminate this compact. The states did so as well under underlying compact and contract law. So to this point, though, there is no role, there is no need for Congress to act. There is no need for New York to act here. It is sufficient for New Jersey to exercise its right of withdrawal. In saying that the states reserved that to themselves, are you relying on the language of the contract limiting the enforcement provision to persons defined to exclude the states? And if so, is that a plain language argument or is it ambiguous whether that reaches an action like this, which is not your traditional enforcement but the actual compliance with one contract partner's responsibilities under the compact? So I think the issue of the parties who are the persons who are subject to the compact is relevant because the states are clearly not. This is not a compact where the states are agreeing that they are bound by some kind of duties or obligations, unlike many other compacts that do that. It's also relevant to the question of who is intended to be within the scope of the enforcement powers of the commission. States clearly not within that. In terms of the ambiguity then for termination and withdrawal, I agree that those terms clearly are not, I mean, I don't agree. It is our position that those terms are not addressed. Is it ambiguity? I believe it is ambiguity only. Or is it simply, where is the ambiguity? There's nothing said at all. I agree that this is ambiguity only within the framework of the Waynland case. It is not explicit, and therefore you have to go to these other procedures. I do not believe, though, that it is ambiguous that states can withdraw. This is a background principle of a contract and compact law. So do we apply rules of statutory interpretation here or of contractual interpretation? And does it matter? It does matter to some extent because both under Tarrant and under the court's most recent speaking to this in Waynland, you apply contract principles to a contract between the states. And so there is a background principle of contract law that speaks in the silence here, and a well understood and well established, almost black letter rule of contract law that speaks in the silence. So in that sense, it's maybe a little misnomer to say that this is ambiguous. It's silent on that because the states intended to rely on background principles of contract law to govern their relations. Go ahead. Jan, you've taken us into merits. And looking at the language of the compact that has been blessed by Congress, to what extent are you relying on the exclusion of states from the definition of person to say that the commission doesn't have the capacity to bring this suit? And there, is it clear that that enforcement provision with that limitation applies to a situation like this? If not, given the 11th and even 10th Amendment concerns, but certainly 11th Amendment concerns, does constitutional avoidance suggest that we read it that way? The states clearly did not surrender their immunity to suit in federal court in this compact. Unlike the compact in the Entergy case, where the Eighth Circuit found that there was a clear expression of intent to surrender sovereignty, sorry, surrender immunity, and to actually give, in that case, the compact commission a right to sue to enforce obligations of the states under the compact. Neither of those conditions are present here. And so we do believe, and the Supreme Court in the Alabama decision really expressed some concern about these types of situations where a compact agency is trying to sue to enforce the obligations of the state under a compact, unless the compact itself as an entity specifically gives the commissioning right to do so, or the other state is also, as happened in Alabama, also a party to the lawsuit. And the compact commission is just saying, me too, me too. I have the same claims. I also want to be heard. Justice Scalia says, no harm, no foul. They will allow the compact commission to continue to sue. Justice Roberts had real concerns. Chief Justice Roberts had real concerns about allowing that under any circumstances. But here, none of those conditions are satisfied. There is no cause of action. The states have not waived their sovereign immunity. This is, in effect, a suit against the state, notwithstanding the fact that they have properly pled an ex parte claim here. But if we look to the criteria set out in VOPA, there the court was looking to a right to sue, just to sue and be sued without qualification on the one hand, and on the other, that there were interests of the commission in question. Why don't we have both of those here? I mean, in terms of the interests, they are even identical, right? The right to get certain records and certain powers that have been prescribed in the compact to the commission. And capacity to sue looks just like VOPA, right? It's sue and be sued as a standalone power, unless you're arguing to us that the enforcement provision, with its limitation on the ability to bring an injunctive action against persons, somehow modifies and qualifies that right to sue. I think it's sue and be sued. One, you have to have a claim that you can assert not just against the world in general, but against a specific party, in this case the state. Two, it has to be free of a right of veto. If I'm remembering the language in VOPA, it has to be free of a right of veto in the state. And that's one of the things that the Supreme Court said, that's very unusual. They're not free of a right of veto here. That's the very essence of our initial argument, is to say, we want to give you the opportunity to veto this, New Jersey's commissioner. So that's going to the requirement of unanimous consent of both commissioners to that provision. And so in that sense, those VOPA concerns are present here. They are not satisfied because, A, they don't have a cause of action against the states. They have a cause of action. We don't dispute that they are entitled to enforce. Indeed, their very function is to enforce the compact against regulated entities, of which the states are not. And then two, that that right of action and that right to sue and be sued is subject to a veto from the state by way of the state's commissioner. We were not given an opportunity to do that here. And so for those reasons, under VOPA, this suit is extraordinary and should not be entertained by the courts. So my time is over. Thank you, Your Honor. Thank you very much. We'll have you back on rebuttal, Mr. Love. Mr. Kelly. Thank you. May it please the Court, I'm Sean Kelly for the Waterfront Commission of New York Harbor. I assume from Your Honor's comments earlier that you would prefer that I address the procedural defenses first and deal with merits subsequently. Yes, please. I will take it in that order then. The bulk of the procedural defenses raised by the appellants here are premised on theories that either the commission is not a proper plaintiff or the governor is not a proper defendant or that the claim itself is not a proper invocation of the Ex parte Young exception to sovereign immunity. We've responded in our brief with a great many cases addressing each one of those. Why isn't New Jersey the real party defendant in interest here? New Jersey is not the real party defendant here, Your Honor, because under the analysis in first Ex parte Young and later Kirtland and Verizon Maryland, the distinction between the case that we are bringing where we're seeking purely prospective, purely equitable relief against a specific identified state official who is charged under the statute with implementing that preempted state law, and therefore under the Ex parte Young exception, that is different from the kind of case where a plaintiff, as in Kirtland, is coming forward and through artful pleading is in fact making a claim for an award of money damages against the state treasury itself. Well, let's return to Virginia office, although I prefer Judge Krause's acronym, VOPA. It's a lot easier to say. In VOPA, the Supreme Court, I think, said that whether the judgment sought, and this is what determines whether a state is a real and substantial party in interest, whether the judgment sought would expend itself on the public treasury or domain or interfere with public administration. Stopping the governor from notifying New Jersey's withdrawal from the compact would seem to interfere with public administration, wouldn't it? Only incidentally, Your Honor. And I think VOPA itself, as well as subsequent cases, have addressed the issue that just about any injunctive relief is always going to have some sort of incidental impact. Then wouldn't Chapter 324 redirect employer assessments here from the commission's coffers into New Jersey's, and doesn't that as a consequence in affecting New Jersey's coffers implicate its public treasury? That would unquestionably happen, Your Honor, yes, undeniably. But that's not relief sought by the plaintiff. No one's writing out a check to a plaintiff here to pay off a money damages judgment and draw it upon the state treasury. And that really is the applicable distinction under VOPA and the cases that I cited before. Isn't the relief in this walks and talks like specific performance of the contract? And putting aside whether that falls into the special sovereignty exception for 11th Amendment purposes, that seems to reveal the actual party in interest because it's requiring the state to keep itself in a contractual arrangement. As I read it, correct me if I'm wrong, but Article 13 of the compact also seems to require that budgets are submitted to the governor and excess requirements are actually assessed against the state treasury. So that specific performance would also require outlays from the state treasury under the terms of the compact. How does that not go directly to New Jersey as the state, as the party in interest here? I'm not aware of anything in the record that indicates that there has ever, in fact, been such a payment from the state historically. I don't think there's anything in the record that would support that. The issue of the party in interest as a plaintiff here is undoubtedly true that New York could have brought a similar action against New Jersey. It's not that the Waterfront Commission is the one and only entity in the world that could possibly bring this case. And New York, as Judge Harbin indicated before, could have brought it in original jurisdiction in the Supreme Court, which may be what happens down the road still, who knows. But the Waterfront Commission nonetheless is an interstate entity, not a state entity like as was the case in VOPA. It's an interstate entity which is separate from state entities and for that matter separate from federal entities, although it is grounded in a federal statute, a statute to which the Congress has consented. Your Honor indicated before that it walks and talks very much like a contract cause of action. The reason for that is that the particular statute under which we are suing, as an ex parte Young Exception to the Sovereign Unity Doctrine, the federal statute involved is one that adopts and consents to a contract that has been negotiated between two states. So it is similar to a contract action in a lot of ways, but it's not a contract action. We don't have a claim of breach of contract and that would not be a proper claim for us to assert. The claim that we can assert as a commission is an ex parte Young claim where we are seeking relief to prevent a state actor from enforcing a preempted state law that is in conflict with a federal statute. And there's no question that although this was a contract negotiated between two states to which the Congress consented, that consent transformed that compact into federal law. That's black letter law going back to Green v. Biddle in 1823. Mr. Kelly, do you agree with Mr. Love's statement that New York has no problem with New Jersey's withdrawal from the compact? No, I do not agree with that for two reasons. I suppose the technically correct answer is there's nothing in the record that says what New York's position is. Nothing in the record including the glaring omission of New York's lack of intervention in this case. We can make something of that, can't we? Yes, we can. Well, I wouldn't want to speculate as to why they chose to let the Waterfront Commission carry the ball themselves, especially with political entities. There can be a lot of different descriptions. Not speculate, but can we appropriately infer that they at least made that decision given their absence? I'm sure they know about the case, and I'm sure they gave thought to it. But beyond that little bit of speculation, I would not want to go. But we can also see in the record that the New York Commissioner, appointed by the State of New York to represent New York's interest on the Waterfront Commission, he voted to ratify the bringing of this action. So I think that speaks as loudly as anything else as to where New York sits. And the appellants themselves have made it clear again today from this podium that their understanding is that New York is not inclined to reach an agreement to unwind the Waterfront Commission at this point. But shouldn't, I don't know, it just looks like it should be a case between the two states. Why is that wrong? I don't believe it's wrong. I think it could have been between the two states. Just because it could have been doesn't mean that this can't be. Exactly, exactly. The two are not mutually exclusive options. Either it could have happened, or indeed the Waterfront Commission could have sued along with the State of New York as co-plaintiffs. I think it's far too young. You're looking at a judge-made remedy, an equitable remedy, right? Yes, you're right. And it's not a freestanding claim under the Supremacy Clause. Congress can abrogate that equitable right. And here it blessed a compact that has at least two provisions that look like the states, the parties to the compact. And Congress took some pains to ensure that a decision like a decision to sue with the commission as the actor had to be with the unanimous consent, not just unanimous consent, but unanimous consent of both commissioners, right? Yes, ma'am. When it came to the provisions for what kinds of suits could be brought by the commission, in that paragraph that lays out its enforcement powers, but also describes powers like the power to prevent interference with the contract or to prevent violations of the compact. It also goes to pains through the amendment to ensure that those kinds of claims for injunctive relief cannot be brought against the states. Why shouldn't we read those two provisions in the compact itself, blessed by Congress, to be congressional abrogation of the equitable right to sue that would otherwise exist under Ex Parte Young? We've started a brief, as I recall, of three different cases where Ex Parte Young actions have been brought, notwithstanding the fact that the preempting federal legislation did not create any statutory cause of action. And the reasoning in those cases was that you don't need a statutory cause of action created by the preempting federal statute. You're seeking equitable relief via the theory that was first articulated in Ex Parte Young. It is a judge-made remedy in that sense. But my question goes to not the power to bring it, but the qualification of that power. Because those two provisions look like the parties to the compact were trying to ensure that the commission wasn't able to bring suit against either of those parties. That if there was going to be a dispute between the two of them, that that would result in an impasse between the commissioners, and the commission is precluded in that provision of that definition of persons from bringing suit against a state. Well, number one, of course, we're not bringing suit against the state. We're bringing suit against the individual state officer. And while that sounds like I'm quibbling, it's not an unimportant quibble in this context. It's part of what makes this an Ex Parte Young claim and makes it not barred by sovereign immunity. So it's a big difference. The section of the compact to which Your Honor refers does – I don't know – I can't purport to know exactly what the drafters on each side of the Hudson River had in mind with respect to that. But it does not, as a matter of law, prevent an Ex Parte claim. We know that from the cases we cited in our brief, the tobacco settlement case, and I forget what the other two related to. But the Ex Parte Young claim can be brought, notwithstanding that kind of statutory failure to create a cause of action. Well, it can be brought, but does that – in the abstract, it can be brought. But in this case, the compact defines persons to include natural persons, partnerships, and any other legal entities. But here, I don't get the sense that you've sued Governor Murphy as a natural person. You've sued him qua governor. Yes, Your Honor. And the definition specifically excludes the United States, any state or territory thereof, et cetera, or authority of one or more of the foregoing. So why haven't you sued an authority of a state, namely the governor? We have sued the governor, and obviously the reason we were suing him was in his official capacity. I'm not sure that technically falls within the definition of an authority. Do you think that's what authority means or what was intended by the use of that word here? As opposed to an authority as some municipal subdivision. I don't know the answer to that, Your Honor. It's important because if authority just means the water authority, the sewer authority, then you don't have a problem. But if authority includes an authority of the government, i.e., a government actor like the governor, the chief executive, then you don't fall within the definition and the commission cannot maintain a civil action against this defendant. I don't think that that provision could be read to exclude the possibility of an ex parte young action because that's a cause of action that is judge-made and equitable and does not rely on that compact language as to whether it is permissible or not. It needs to be permissible in order for the federal law to be vindicated in the face of a preempted state law with which it is inconsistent. I should clarify that by authority. I didn't mean to suggest it only refers to the water authority or some entity that bears the title authority. I guess what we're struggling with is that it's not necessarily inconsistent if that's how you read the provision. Then the equitable power to bring the ex parte young suit has been curtailed by the terms of this federal law itself. I don't know of any case that would hold that an ex parte young cause of action has been cut off in such a way. The cases that we cited in our brief, I think, tend to suggest the contrary, that the ex parte young cause of action exists separate and apart from statutory authorization. In bringing a suit against someone like the governor, is there a difference between an ex parte young suit to prevent enforcement of the state regulation versus to prevent the effective enactment of a statute? In other words, that the notification here may not fall so much in the enforcement side as to the statute becoming effective. Well, the statute has in fact been adopted. It was signed by Governor Christie on his last day in office. But it doesn't take effect until a specified number of days after that notification. That's right. And we acted within that time period. So I guess it's really one in the same whether the act comes into effect or notice is given. The passage of time and the giving of notice would really both be prerequisites to the act becoming fully effective. And so if what we're talking about is an ex parte young action to function as a legislative veto, is that really an appropriate application of the doctrine? Can you point us to any case law that supports the notion that an ex parte young action to prevent something as core to state sovereignty as its legislature's ability to effectuate legislation would be the proper subject of a suit that doesn't go to core sovereign interests? I think, Your Honor, even ex parte young itself in 1908 effectively was brought for the successfully brought for the purpose of preventing the attorney general of Minnesota from carrying out a newly enacted Minnesota statute that was at odds with federal loans preempted by federal law. And the Supreme Court found that that was a proper action to seek prospective injunctive relief to prevent the carrying out of a state law that is preempted by federal law. So I think I think it's really quite similar to the origin to ex parte young itself. As far as the special sovereign interests are concerned, if I can just touch on that for a moment, because Your Honor mentioned it, the appellants have mentioned in their brief that they believe that the ex parte young exception here should not apply because this case falls within an exception to that exception in the sense that it implicates special sovereign interests. And they rely on the Kirtland Indian tribe case for that. The Kirtland case, of course, has to do with a Native American tribal claim to state owned lands. And in that context, the Supreme Court held that the ex parte young exception was inapplicable because what the tribal plaintiffs were doing really was not seeking injunctive relief against a state actor. They were seeking essentially damages from a state treasury or the equivalent of damages from a state treasury in the form of title to real property. And five years later in Verizon, Maryland, the Supreme Court emphasized that Kirtland should not be expanded beyond the fairly narrow factual circumstances that gave rise to that decision. And that the test, the true test of whether ex parte young applies is a straightforward inquiry. Either the plaintiff is seeking essentially and primarily equitable relief against a state actor, in which case the ex parte young exception applies and sovereign immunity is not a problem. Or, as in the Kirtland case, the plaintiff is effectively really looking for a damages award from the state treasury, in which case the ex parte young exception does not apply and the case is barred by sovereign immunity. Our case obviously doesn't challenge anything about New Jersey's title to real estate. We're not seeking an award of damages from New Jersey. We are not seeking anything other than equitable relief and only against the identified state of the one and only identified state actor in the statute who is responsible for enforcement. One quick question, Mr. Kelly. If we rule in your favor, is there anything to prevent New York and New Jersey from agreeing that the compact should be dissolved and taking action to effectuate that? No, Your Honor. There's not. Nor is there anything to prevent Congress tomorrow from appealing its consent. It's drawing its consent. Okay. Thank you very much. Thank you, Kelly. Have Mr. Love back in the budget. Mr. Love, could you start where we left off there? Because you had indicated that New York was in agreement with New Jersey that the compact should be terminated, and Mr. Kelly disagrees. Your Honor, I want to say, if I said that I misspoke, I meant to say New York has made no objection to New Jersey's actions here. I do not want to suggest one way or another that they have affirmatively agreed with our position here. I think it is consistent with the right of either state to withdraw. And if the other state wants to sue, in Judge Krause's terms, for specific performance of the compact, they are entitled to do so. And, indeed, that happens frequently, as we see. All right. So New York may not want New Jersey's withdrawal. Maybe New York is just happy to have Mr. Kelly and the commission carry the ball for them. I don't want to speculate on what New York has or hasn't done. The fact is that this is not the proper case to test that. If New York has an objection, they have a right that they can assert against New Jersey, and there's nothing preventing them. And it's not appropriate to essentially let the commission speak or stand in New York's shoes and try and prosecute a suit that the compact expresses. All right. And that needs to go to the Supreme Court. If this went forward, if this hadn't been enjoined, and New York disapproved of New Jersey's withdrawal, then New York has to file an original action against New Jersey in the Supreme Court. The parties would have the right to invoke original jurisdiction, and it would fall within the original jurisdiction, jurisprudence of the Supreme Court, whether they take it. I suspect that this case, being one of legal issues that hopefully could be resolved, could be taken. But I, again, don't want to speculate on whether they would or wouldn't take it. I do believe that this is really an issue akin to specific performance that highlights the fact that this case should have been brought by a party to the compact and not by the commission, which is merely an instrumentality of the compact and not actually a party. Armstrong, the Armstrong decision, goes to this very issue of whether or not a compact, well, not a compact, but a law that cuts off a remedy intends to leave open some kind of general equitable powers of the court. And Armstrong says no. If a statute says there is an intent to not provide a remedy, a cause of action, the court should not be looking to their general equitable powers to try and get around that, to circumvent that limitation. I would also say that Armstrong also holds that courts should not infer a private right of action or any kind of private action created by implication in statute. It has to be unambiguously conferred, and that has not been done here. And I appreciate the questions that the panel asked, whether the governor is an authority under the definition, the exclusion in the definition of persons. And I appreciate, look, I don't know whether he's an authority or not. What I do think is clear is that the states intended that exclusion to persons to be quite broad. And it would be, I think, kind of extraordinary to suggest that an action against the governor under these circumstances would not fall within that exception to the person definition. Thank you. Thank you very much, Mr. Love. Thank you to all three of arguing counsel for your helpful presentations and also for the excellent briefing in this case. We'll take the matter under advisement.